IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

|  |  |  |
|---|---|---|
| DEBRA MARLOW, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL NO. 3:10CV018 |
| CHESTERFIELD COUNTY SCHOOL BOARD; and MARCUS NEWSOME, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

This matter is before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1) on the Defendants Chesterfield County Public Schools ("CCPS") and Marcus Newsome's ("Newsome") Motion to Dismiss (Docket No. 5). For the reasons set forth herein, the Defendants' motion is GRANTED.

**I. Background**

From 1987 to 2009, Plaintiff Debra Marlow ("Marlow"), aged sixty years and female, was employed by CCPS. (Compl. ¶ 8, Defs.' Reply 2). From the time of her hire until July 2008, Marlow served as the Director of Community Relations and Legislative Liason ("DCR"). (Compl. ¶¶ 8, 12, 14). Throughout the entire period of her employment with CCPS, Marlow consistently received excellent performance evaluations from her various superiors. (Compl. ¶ 9). In April 2008, the date of Marlow's most recent performance evaluation, Newsome, as her

1

evaluating superior at the time, gave her a favorable rating of "meets or exceeds" in every evaluation category. (Compl. ¶ 11).

The events giving rise to this litigation originated in early April 2008. On or about April 4, 2008, Newsome announced that Marlow would cease to serve as DCR and would be transferred to the position of Director of Business and Government Relations ("DBGR"), effective July 1, 2008. (Compl. ¶ 12). Marlow opposed the proposal, and prior to July 1, 2008, while still serving as DCR, she tried to persuade Newsome to eliminate the DBGR position and assign all of the duties that the DBGR position entailed to Marlow in her capacity as DCR. (Compl. ¶ 13). Marlow alleges that elimination of the DBGR position would have saved the county government approximately $150,000 in salary and benefits, which was what CCPS had been paying the retiring DBGR whom Marlow was to replace. (Id.). Nevertheless, Newsome rejected Marlow's proposal and moved forward with Marlow's transfer to the DBGR position, as scheduled. (Compl. ¶ 14). Thereafter, Tim Bullis ("Bullis"), a thirty-seven year old male, and Marlow's former Assistant DCR, was promoted to DCR as Marlow's replacement. (Compl. ¶ 15).

In mid-January 2009, approximately six months after Marlow and Bullis had assumed their new positions, Newsome informed Marlow that CCPS planned to eliminate the DBGR position in any event as part of a reduction in force ("RIF") initiative. (Compl. ¶ 18). Newsome advised Marlow that she could nevertheless accept the position of Administrator of Communities in Schools ("CIS"), which, however, would be a demotion. (Compl. ¶ 19). Marlow responded with an alternative suggestion of returning Bullis to his former position of Assistant DCR and promoting her (Marlow) from DBGR back to her former position as DCR. (Id.). Marlow argued

that her proposal was appropriate because she was more experienced and more qualified for the DCR position than Bullis. (Compl. ¶ 20). In rejecting Marlow's proposal, Newsome allegedly told Marlow that: "I am not having two directors, and I want 21st Century communication skills and Tim [Bullis] is better at that." (Id.).

On or about January 30, 2009, Newsome forwarded a letter to Marlow informing her that her DBGR position would, in fact, be eliminated due to the RIF initiative, and that she would be demoted to CIS. (Compl. ¶ 22). However, Marlow did not accept the demotion. Had she accepted it, she alleges that her compensation would have been reduced from the $124,000 (plus benefits) that she received during the 2008-2009 school year to $109,250 (plus benefits). (Compl. ¶ 10, 23). Additionally, she asserts that accepting the demotion would have had a negative effect on her retirement benefits. (Compl. ¶ 24). Accordingly, Marlow applied for immediate retirement in order to avoid the demotion. (Compl. ¶ 25).

On January 8, 2010, Marlow filed this instant complaint against defendants CCPS, the Chesterfield County School Board ("CCSB"), and Newsome, in his official capacity as Superintendent of the CCSB, in which she seeks relief pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*., ("ADEA"). (Docket No. 1). Marlow contends that Newsome's statement that "I want 21st Century communication skills and Tim is better at that" demonstrated an age-based bias against her, and that such a bias was the reason for the elimination of her DBGR position, her demotion to CIS, and the resulting reduction in her compensation and benefits. (Compl. ¶¶ 19, 21, 30, 31, 34). Marlow also contends that because of her age, Defendants altered the terms of her employment and thereby forced her to seek early retirement. (Compl. ¶ 18, 25, 30). Marlow asserts that her forced early retirement caused her to

suffer five years of lost income at her DCR salary, plus additional damages to her total retirement benefits. (Compl. ¶ 25). Marlow supports her overall argument by asserting that her communication skills are superior to those of Bullis by any objective measure, and that she was otherwise more experienced and better qualified for the DCR position than Bullis. (Compl. ¶¶ 21, 31). Marlow also emphasizes that Newsome had never informed her previously of any alleged deficiencies in her communication skills, or any other aspect of her performance. (Compl. ¶ 21).

Defendants seek the dismissal of the claims against both CCPS and Newsome on the basis that neither is a proper defendant. (Docket No. 5). With regard to CCPS, Defendants essentially argue that CCPS is not a legal entity subject to suit. (Defs.' Mem. Supp. Mot. 2). In addition, as to Newsome, Defendants argue that he is not a proper defendant because he is an "employee," rather than an "employer," within the meaning of the ADEA; and, therefore, he cannot be held liable for the claims brought pursuant to the ADEA. (Defs.' Mot. 1, Defs.' Mem. Supp. Mot. 2). The parties have now stipulated to the voluntary dismissal of CCPS. (Docket Nos. 9, 13). Accordingly, the only remaining question regarding the pending motion is whether Newsome is a proper defendant, the CCSB not being a party subject to the motion.

## II. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the

4

claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), and be one that is "plausible on its face," id. At 570, rather than merely "conceivable." Id. Therefore, in order to "survive" dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or her] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)).

In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952. This rule, however, is inapplicable to legal conclusions. Ashcroft v. Iqbal, 556 U.S. ---, 129 S. Ct. 1937 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

### III. Discussion

Congress enacted the ADEA "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and], to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). The Act defines the term "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . [and] any agent of such a person." 29 U.S.C. § 630(b). CCSB employed at least twenty people during the twenty calendar weeks preceding this case, and is thus an "employer" subject to the ADEA. (Compl. ¶¶ 4, 29). Furthermore, because Marlow is at least forty years of age, she is protected by the ADEA, and because she was employed by CCSB, an ADEA "employer," she is an "employee" within the purview of the ADEA. (Comp. ¶ 8). See 29 U.S.C. § 631(a) and § 630(f).

Although some courts have relied on the use of the word "agent" in § 630(b) to find individual liability under the ADEA, the majority of courts have held that the term "agent" refers to respondeat superior liability. For example, the Fourth Circuit has stated that it interprets § 630(b) as "an unremarkable expression of respondeat superior," and that "the ADEA [therefore] limits civil liability to the employer." Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 (4th Cir. 1994) (citing Miller v. Maxwell's Int'l Inc. 991 F.2d 583, 587-88 (9th Cir. 1993)). In Birkbeck, the Court reasoned that by limiting the ADEA's definition of "employer" to those employers who have at least twenty employees working for them, Congress intended to reduce the burden of the ADEA on small businesses. Thus, Congress certainly would not have intended,

at the same time, to expose individual employees to ADEA liability. 30 F.3d at 510 (citing Miller, 991 F.2d at 587) ("If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees."))

Other courts have followed the Fourth Circuit's logic in analyzing ADEA liability as an expression of respondeat superior. See, e.g., Stults v. Conoco, Inc., 76 F.3d 651, 655 (5th Cir. 1996) (holding that "the ADEA provides no basis for individual liability for supervisory employees)); Matthews v. Rollins Hudig Hall Co., 72 F.3d 50, 52 n. 2 (7th Cir. 1995) (stating that the principle enunciated in E.E.O.C v. AIC Security Investigations, Ltd., 55 F.3d 1276, 1279 (7th Cir. 1995)–that individuals do not independently meet the Americans with Disabilities Act ("ADA") 42 U.S.C. § 1211 et seq., definition of "employer," and therefore could not be held liable under the ADA–applies in the ADEA context)); and, Martin v. Jeffreys, 1995 U.S. Dist. LEXIS 14533 at *7 (M.D.N.C. Aug. 23, 1995) (holding that the ADEA limits civil liability to the employer under a respondeat superior theory; and therefore, since the defendant was not an "employer" within the meaning of the ADEA, he was not a proper defendant in that case)).

Defendants argue that because Newsome is an "employee" rather than an "employer" within the meaning of the ADEA, he is not subject to personal liability under the ADEA, and is therefore an improper defendant in the action. (Defs.' Mem. Supp. Mot. 3). While acknowledging that the word "agent" in § 630(b) creates respondeat superior liability, Marlow nevertheless argues that Newsome should still remain as a proper defendant since he is being sued in his official, rather than individual, capacity. (Pl.'s Response 1, 3). Marlow emphasizes that the court in Birkbeck dismissed the employee-defendant from that case because, unlike here,

7

the plaintiffs in Birkbeck "urge[d]" the court to find their manager "individually liable." (Pl.'s Response 3) (quoting Birkbeck, 30 F.3d at 510)).

However, whether Marlow has sued Newsome in his individual or official capacity is immaterial because the ADEA does not permit official-capacity claims against non-employer individuals. See Seres v. Liberty Chevrolet Inc., No. 98-5999, 1999 WL 11779, at *1 (S.D.N.Y. Jan. 12, 1999) (holding that "there is nothing to show that Congress intended to permit suits against individuals in their official capacity.")); See Acevedo v. Monsignor Donovan High Sch., 420 F. Supp. 2d 337 (D.N.J. Feb. 28, 2006) (dismissing ADEA "official capacity" claim against principal of high school); Daggy v. Staunton City Schools, No. Civ.A. 5:04CV00023, 2004 WL 2900653 at * 3, (W.D. Va. Dec. 13, 2004) (dismissing ADEA "official capacity" claim against School Board members and the school superintendent) (citing Birkbeck, F. 3d at 511)). Moreover, as Defendants correctly note, a claim against Newsome solely in his official capacity is "at best duplicative" of the claim against CCSB where CCSB is the only entity that could legally be held liable under the ADEA. (Defs.' Reply 1) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985) (official capacity suits generally represent only another way of pleading an action against an entity of which the officer is an agent)).

Additionally, Marlow argues that Newsome should remain in the case because her evidence will focus on his wrongful actions. (Pl.'s Response 3). Specifically, Marlow asserts that she should be allowed to present evidence to support her argument that Newsome was principally responsible for the subject adverse employment actions. (Id.). Marlow also argues that dismissal of Newsome may prejudice her case by causing jury confusion. (Pl.'s Response 4). Marlow theorizes that, given that Defendants are likely to argue that CCSB merely adopted

8

Newsome's recommendations, and not his "unlawful motives," a jury may conclude that the school board defendant should not be held liable for another person's wrongful actions if Newsome is removed as a party defendant. (Id.).

Marlow further asserts that the Defendants will not be prejudiced if Newsome remains as a named defendant because CCSB is the only entity that can be held ultimately liable. (Id.). However, as Defendants note, "jury confusion" is not a factor to be considered in determining whether a claim has been properly asserted pursuant to Rule 12(b)(6). (Defs.' Reply 3). But even if such potential confusion were a factor, a jury is just as likely to be confused by the presence of a defendant in a lawsuit against whom no claim for damages or other relief has been asserted. (Id.). Finally, as Defendants note, a court should not force an individual to bear the financial and emotional expenses of litigation if the litigation cannot possibly result in an award of damages against that person. (Id.) (citing Gray v. Shearson Lehman Bros., Inc., 947 F. Supp. 132, 136 (S.D.N.Y. 1996)).

Marlow concludes her argument by stating that the court in Birkbeck approved of the idea that an agent of a public entity is liable only in his or her "official capacity" in the Title VII context: "Employer liability ensures that no employee can violate the civil rights laws with impunity, a safeguard that has proven sufficient with respect to Title VII, the ADEA's closest statutory kin." Id. at 510 (citing Harvey v. Blake, 913 F.2d 226, 227-28 (5th Cir. 1990) (holding that the similar provisions in Title VII, 42 U.S.C. § 2000e(b), mean that individuals acting as employer "agents" will be liable in their official capacities only)). However, it is not clear how Marlow's argument supports her position since the citation to Harvey in Birkbeck is consistent with the Fourth Circuit's holding that the ADEA limits ADEA civil liability to the employer

9

pursuant to the doctrine of respondeat superior. To hold otherwise would, to "coin" an old saying, result in the subsection of the statute ( § 630(b)) "swallowing the rule." In any event, the Fourth Circuit in Birkbeck makes it clear that non-employer individuals cannot be held personally liable under the ADEA for "personnel decisions of a plainly delegable character." 30 F.3d at 510. "Delegable" personnel decisions have been characterized as decisions that "any employee in a supervisory position might make, such as decisions to hire, fire, or discipline." Worsham v. Brown, 2001 WL 34837023 at *3 (E.D. Va. March 29, 2001) (quoting Speight v. Albano Cleaners, Inc., 21 F. Supp. 2d. 560, 565 (E.D. Va. 1998)). The only type of conduct that courts have not characterized as "plainly delegable" concerns allegations of sexual harassment. Worsham, at *3 (citing Williamson v. Virginia First Savings Bank, 26 F. Supp. 2d 798, 805 (E.D. Va. 1998)). Thus, in the absence of any allegation against Newsome of sexual harassment, any decisions or recommendations that Newsome made regarding Marlow's employment were "delegable."

Thus, because Newsome, whether he is considered to have been sued in his individual or his official capacity, is not subject to any liability in the case, he cannot remain as a party defendant. CCSB is the only entity that is subject to any potential liability where § 630(b) prescribes respondeat superior, thereby limiting civil liability to the employer. Furthermore, the "delegable" nature of Newsome's recommendations to CCSB also support the conclusion that he should be dismissed from this case.

## IV. Conclusion

For the reasons discussed herein, Defendant's motion to dismiss (Docket No. 5) is GRANTED.

An appropriate Order shall issue.

                                                     /s/
                                       Dennis W. Dohnal
                                       United States Magistrate Judge

Richmond, Virginia
Dated: July 13, 2010