IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| DEBRA MARLOW, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL NO. 3:10cv18-DWD |
| ) | |
| CHESTERFIELD COUNTY ) | |
| SCHOOL BOARD, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This matter is before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1) on the Plaintiff's motion to compel (Docket No. 18) and the Plaintiff's motion for enlargement of time to respond to Defendant's motion for summary judgment (Docket No. 22). For the reasons set forth herein, the Plaintiff's motion to compel is GRANTED in part and DENIED in part and the Plaintiff's motion for enlargement of time to respond to Defendant's motion for summary judgment is GRANTED in part and DENIED in part.[1]

**I. BACKGROUND**

**A.     The Allegations**

Debra Marlow ("Marlow" or "Plaintiff"), aged sixty years, alleges that the Chesterfield County School Board ("CCSB" or "Defendant") discriminated against her based on her age.

---

[1] Within her motion for enlargement of time, Plaintiff also moves to strike the Defendant's brief in support of summary judgment. That portion of the motion is DENIED because, contrary to Plaintiff's assertions, Defendant's brief complies with Local Rules 7 and 56.

(Compl. ¶ 8.) Between June 1987 and July 2008, Marlow served as the Director of Community Relations ("DCR"). (Compl. ¶¶ 8, 9, 12.) Effective July 1, 2008, she was transferred to the position of Director of Business and Government Relations ("DBGR"), allegedly over her objections. (Compl. ¶ 12.) As a result, Marlow's former assistant, Tim Bullis ("Bullis"), age thirty-seven years, was promoted to Marlow's former position as DCR. (Compl. ¶ 15.)

Marlow alleges that, at the time she was transferred to the DBGR position, CCSB knew or should have known that a reduction in force ("RIF") would ultimately necessitate the termination of the DBGR position. (Compl. ¶¶ 16-18.) CCSB denies that it knew of any impending reduction in any particular position at that time, specifically pleading that the decision to take such action in fiscal year 2009/2010 did not occur until the fall of 2008. (Answer ¶ 17.) Indeed, the DBGR position was eliminated as part of a RIF in early 2009. (Compl. ¶ 18.) When that event occurred, CCSB Superintendant Marcus Newsome ("Newsome") told Marlow that she could accept the position of Administrator of Communities in Schools ("CIS"), a position that Marlow alleges was a demotion. (Compl. ¶ 19; Answer ¶ 19.)

Marlow refused the CIS position, instead demanding that she be reinstated as DCR, with a demotion of her replacement (Bullis) to his former position as Assistant DCR. (Id.) The Superintendant allegedly responded that "I am not having two directors, and I want 21st Century communication skills and Tim [Bullis] is better at that." (Compl. ¶ 20, 21.) Marlow characterizes the Superintendant's comment as a "veiled euphemism for favoring a younger DCR." (Compl. ¶ 21.) Moreover, Marlow alleges that the Superintendant's decision violated CCSB's own RIF policy because of Marlow's seniority over Bullis. (Compl. ¶ 26.)

Had Marlow accepted the alleged demotion, her compensation would have decreased

from $124,000 per year to $109,250 per year. (Compl. ¶ 23; Answer ¶ 23.) The change in position would have also affected her Supplemental Retirement Program ("SRP") benefit which pays 175% of an employee's last year's salary. (Compl. ¶ 24.) To avoid such an outcome, Marlow retired five (5) years earlier than she had previously planned, allegedly reducing her retirement benefits as a result. (Compl. ¶ 25.)

As a consequence of these events, Marlow alleges age discrimination pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), causing the following adverse employment actions: termination; demotion; reduction in compensation; altering terms of employment; and causing early retirement. (Compl. ¶¶ 28-30.)

**B.     Discovery**

Marlow indicates that CCSB has failed to provide adequate responses to discovery, including her request for the following documents: (1) emails of key CCSB employees; (2) personnel files of Marlow, Bullis, and other CCSB employees; (3) all documents relating to the 2009 reduction in force; (4) performance evaluations known as "360 Reviews" for Marlow, Bullis, and other CCSB employees; and (5) all documents related to Bullis' promotion and the applicable hiring process.
(Pl's Br. at 1, 4.)

    **1.)     Emails**

Marlow asks for all emails, including attachments, to or from Newsome, Bullis, or Marlow from January 1, 2008 to present. (Pl.'s Br. at 8; Ex. A.) The requests are not limited in any way to the subject issues in the case. Marlow also asks for all emails since January 1, 2008, including attachments, sent to or from any school board member, Chesterfield County Public

3

Schools staff member, or administrator that in any way relate to the following nine (9) categories: Marlow; Bullis; RIF; the DCR position; the Assistant DCR position; the DBGR position; the interim Executive Assistant to Superintendant position; 21st Century; and planning for budget cuts in the 2009-2010 school year. (Pl.'s Br. at 8; Ex. A.) CCSB timely objected to the requests, arguing that they are vague, ambiguous, over broad, irrelevant, and not even reasonably calculated to lead to the discovery of admissible evidence. (Pl.'s Br. at 8, Ex. B at ¶¶ 4, 5.) Based upon the meet-and-confer correspondence between counsel by which several of CCSB's concerns were resolved, the remaining issue appears to be CCSB's contention that the email requests are nevertheless over broad and create an undue burden.

**2.)    Personnel Files**

Marlow has requested the complete personnel files, supervisor files, HR files, and other HR documents related to: (1) Marlow, (2) Bullis, (3) Newsome, (4) Sharon Thomas ("Thomas"), and (5) every person identified in Defendant's Rule 26 disclosures. (Pl.'s Br. at 11, Ex. A.) The Court understands the request to ask for every document that CCSB maintains in the ordinary course of business in a file commonly understood as the "personnel file." CCSB objected on the basis that the request is "vague, ambiguous, and/or overlybroad [*sic*] and, therefore, [] irrelevant and not reasonably calculated to lead to the discovery of admissible evidence." (Pl.'s Br. at 11, Ex. B.) Accordingly, CCSB has not produced any of the files. (Pl.'s Br. at 11.)

**3.)    "360" Performance Reviews**

Marlow has requested all "360" performance reviews for her, Bullis, Newsome, Sharon Thomas, and all other witnesses listed in CCSB's Rule 26 disclosures. (Pl.'s Br. at 12, Ex. A.) CCSB objected, arguing that the request is, again, "vague, ambiguous, and/or overlybroad [*sic*]

and, therefore, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."

**4.)      Documents Related to the DCR Position**

Marlow has also requested "[a]ll documents relating to the [DCR] position from July 1, 2007 forward." (Pl.'s Br. at 13, Ex. A.) CCSB has likewise objected on the grounds that the request is "vague, ambiguous, and/or overlybroad [*sic*] and, therefore, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence." (Pl.'s Br. at 13, Ex. B.)

**5.)      RIF Documents**

Finally, Marlow has requested "[a]ll documents relating to any aspect of a RIF for the 2009-2010 school year . . . ." (Pl.'s Br. at 14, Ex. A.) In response, CCSB timely objected to the extent that the request seeks documents protected by the attorney-client privilege. (Id.) Marlow asserts that CCSB has only belatedly objected on the additional basis that the request is "overlybroad [*sic*] and not reasonably calculated to lead to admissible evidence." (Id.)

## II. STANDARD OF REVIEW

Trial courts have "wide latitude in controlling discovery and [] its rulings will not be overturned absent a showing of clear abuse of discretion." Rowland v. Am. Gen. Fin., Inc., 340 F.3d 187, 195 (4th Cir. 2003). Within its discretion, a trial court must balance various interests in granting discovery requests. See In re ASI Reactivation, Inc., 934 F.2d 1315, 1324 (4th Cir. 1991). "[U]ndue restrictions of discovery in Title VII cases are 'especially frowned upon . . .' [appropriate restrictions] are dictated 'only by relevance and burdensomeness.'" Ardrey v. United Parcel Service, 798 F.2d 679, 684 (4th Cir. 1986) (citations omitted). "[W]hether evidence of discrimination . . . is relevant in an individual ADEA case is fact based and depends on many

5

factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 388 (2008).

### III. DISCUSSION

A.  **The Motion to Compel**

(1)  **Emails**

Marlow seeks all emails to or from Newsome, Bullis, and Marlow during the relevant timeframe. The dispositive issue involved is the permissible scope of the emails sought. CCSB argues that any remaining emails are not relevant or reasonably calculated to even lead to the discovery of admissible evidence. Marlow correctly asserts that at least some of the emails may lead to evidence regarding CCSB's disparate treatment of Marlow or other employees on the basis of age during the relevant period. In addition, some of the emails may, at least, constitute relevant "background evidence" for discrimination purposes (i.e. employer attitudes, biases, prejudices, etc.) See Buckley v. Mukasey, 538 F.3d 306, 319 (4th Cir. 2008).

At the same time, the wording of the request is "broad" where it encompasses a large number of emails that would certainly have no relation to the claims at issue, and would not lead to the discovery of admissible evidence. For example, the request asks for *all* emails since January 1, 2008, potentially including, as noted by the defense, such irrelevant material as personal emails to, or from, friends and family, and even such mundane, irrelevant items as grocery lists. (Def.'s Br. at 5.) Conceivably, however, some personal emails, although not directly related to Marlow's claims, could provide "background evidence" on any of the employer's biases, prejudices, and attitudes as may exist. See Buckley, 538 F.3d at 319. While Marlow may properly discover many relevant emails of Newsome, Bullis, and Thomas, the broad

6

scope of the request is of concern to the Court.

Of even more concern, however, is the possible disclosure of email correspondence that Newsome may have exchanged with such unrelated parties as parents and others dealing with irrelevant, but personal student records and disciplinary matters. Some of the communications may, in fact, be protected by the Federal Educational Rights and Privacy Act of 1974 ("FERPA"). (Def.'s Br. at 5.) Under FERPA, CCSB would be required to notify *every* affected parent and child *prior to* releasing any of those communications. Any such emails have no relation to Marlow's employment or any issue in the case, and the required notification required by FERPA would therefore place an unreasonable burden on CCSB. Moreover, the Court is sensitive to the privacy concerns protected by FERPA, and will therefore not permit discovery of any correspondence within the scope of student records or discipline, absent a persuasive demonstration of relevance.

Marlow also seeks copies of all emails to, or from, any CCSB board member or employee related to nine (9) categories. Because the school board has 8,000 employees, most of whom have no information relevant to the claims at issue, the request is also overly broad and places an undue burden on CCSB for compliance.

To reasonably resolve the dispute, Marlow shall provide CCSB with a realistic and focused list of search terms to narrow the inquiry. CCSB shall then apply the search terms to the emails of Newsome, Bullis, Marlow, and Thomas for the requested time period, remove any emails subject to FERPA, and provide Marlow with the results. As noted by Marlow's counsel at oral argument, such a methodology is not foolproof, but it nevertheless strikes a proper balance between Marlow's need for discovery and the burdens to be imposed on CCSB.

### (2) Personnel Files and "360" Performance Reviews

Marlow further seeks her personnel files and "360" performance reviews, as well as those of Bullis, Newsome, Thomas, and all witnesses listed on CCSB's Rule 26 disclosures. "[B]road access to employers' records" in Title VII cases likely requires, at the very least, discovery of Marlow's personnel files and performance reviews.[2]

CCSB argues that the request is even broader than just a typical personnel file because it also seeks the "complete documents and files including . . . emails." (Def.'s Br. at 7; Pl.'s Br. at Ex. A page 9.) It being arguably the case and, for the same reasons discussed above, the request must be narrowed to include only the personnel files and "360" performance reviews.[3] Marlow asserts that the materials sought are related to her job performance as well as that of Bullis, her asserted comparator. She also argues that the production may lead to the discovery of additional, admissible evidence pertaining to the decisionmakers and high level advisors or HR employees involved in the RIF process.

Marlow's case is premised, in part, on her assertion of her possessing superior qualifications to that of Bullis. As Marlow alleges, the much younger Bullis was promoted "over" Marlow primarily because of her advancing age. According to Marlow, Bullis' qualifications are relevant or, at the very least, reasonably calculated to lead to the discovery of admissible evidence pertaining to his allegedly "weaker" qualifications. Accordingly, Marlow

---

[2]At oral argument, CCSB conceded that Marlow's own personnel file is discoverable.

[3]According to counsel, the only reason that "360" performance reviews and personnel files are treated separately is that they are maintained as separate files. For purposes of Marlow's motion to compel, however, the Court treats such records as equally relevant potentially and thereby discoverable.

asserts that some relevant documents related to Bullis' qualifications may be located in his personnel file and his "360" performance reviews.

Marlow cites a series of cases concluding that a court abuses its discretion if it denies a motion to compel production of personnel files. See, e.g., Coughlin v. Lee, 946 F.2d 1152, 1159 (5th Cir. 1991) ("In Title VII litigation . . . courts have customarily allowed a wide discovery of personnel files"); Weahkee v. Norton, 621 F.2d 1080, 1082 (10th Cir. 1980) (holding that it was an abuse of discretion for the trial court to deny discovery of personnel files of employees who plaintiff claimed were hired or promoted in discriminatory preference). However, the Fourth Circuit, as this Court's immediate controlling authority, has not yet so held. Rather, a plaintiff in this Circuit must still make a showing that the personnel files sought are relevant to the subject matter involved in the case. Kirkpatrick v. Raleigh County Bd. Of Educ., Case No. 95-2491, 1996 U.S. App. LEXIS 3384 at *4 (4th Cir. February 29, 1996) (finding that the Magistrate Judge did not abuse his discretion when he denied discovery of the personnel files of other teachers because the plaintiff failed to establish necessary relevance of the requested material). The Court in that case also held that it was proper for the trial court to balance the privacy interests of the employees against the plaintiff's need for the requested material. Id.

Here, Marlow bases her claim for the subject material on a theory that she is more qualified than Bullis and that, but for her age, she would have been allowed to return to her former position as DCR. Given that rationale, Marlow has made a sufficient showing that her qualifications, as well as those of Bullis, are potentially relevant to trial issues. CCSB must therefore produce Marlow's personnel file in its entirety. However, the Court is sensitive to Bullis' privacy concerns and, therefore, his personnel file and "360" performance reviews shall

be submitted to the Court for *in camera* review and the Court will then only allow disclosure to Marlow of those documents relating to Bullis' qualifications.[4]

The issue of relevancy is not as straightforward for the production of the personnel files of Newsome, Thomas, and all other witnesses in CCSB's Rule 26 disclosures. In support of obtaining Newsome's file, Marlow cites an unpublished district court opinion that holds: "Evidence of general patterns of discrimination is discoverable in disparate treatment cases . . . [Plaintiff's] request for supervisor personnel files is reasonably calculated to lead to the *discovery of prior complaints of discrimination* against [the employer]." Sykes v. Target Stores, No. 00 C 5112, 2002 U.S. Dist. LEXIS 6627, at *15 (N.D. Ill. April 15, 2002) (emphasis added); see also Ardrey, 798 F.2d at 683 (noting that the court may consider evidence of prior discrimination practices by the employer). The Sykes case, however, suggests that the holding is limited to only those supervisory employees involved in the decision-making process at issue. Id. Therefore, it supports Marlow's argument that information in Newsome's personnel file may be relevant to demonstrate prior discrimination on the basis of age. Accordingly, Thomas' personnel file is discoverable for the same reason, but *only if she was involved in the decision-making process* involving Marlow or Bullis.

Once again, the Court has weighed the limited discovery purpose of the subject files against the employees' legitimate privacy interests. Accordingly, CCSB must provide both Newsome and Thomas' personnel files and their respective "360" performance reviews to the Court for its *in camera* review upon which the Court will then order production of those portions

---

[4]The Court will also issue a Protective Order to insure that any information that is disclosed will only be utilized for appropriate and limited purposes.

of the files that are relevant to reveal any prior acts or statements attributable to either party that may demonstrate age discrimination.[5]

Finally, Marlow argues that personnel files are relevant and should be produced for all witnesses listed on CCSB's Rule 26 disclosures because they inevitably contain evidence affecting witness credibility. In support of her argument, Marlow relies on a decision from outside of this jurisdiction that permitted discovery of a witness's personnel file solely because it could be used for impeachment purposes. See Ragge v. MCA/Universal Studios, 165 F.R.D. 601 (C.D.Ca. 1995). In addition, at least one district court in the Fourth Circuit has reached a similar conclusion. See Behler v. Hanlon, 199 F.R.D. 553, 556 at n. 3 (D. Md. 2001) (explaining that the commentary to the revised rules permits discovery of information that, although otherwise irrelevant, could be used for impeachment purposes). Based primarily on the rationale set forth in Behler, it appears that the Federal Rules do, indeed, permit discovery of information for impeachment purposes.

However, Marlow's goal of discovering possible impeachment evidence is not "closely related" to her theory of the case; rather, it is only ancillary. See Sprint/United Mgmt. Co., 552 U.S. at 388. Furthermore, Marlow has failed to articulate any specific parameters of impeachment evidence sought and, with respect to witnesses generally, Marlow's need for such possible impeachment evidence is outweighed by the employees' legitimate privacy interests.

Therefore, the Court grants Marlow's motion to compel the production of her personnel files and "360" performance reviews, directly to her counsel. However, CCSB shall provide those of Bullis, Newsome, and Thomas to the Court initially for its *in camera* review. The Court

---

[5]And, again, the Court will also enter an appropriate Protective Order.

otherwise will deny the motion to compel the personnel files and "360" performance reviews as to all other employee-witnesses for the reasons set forth herein.

### (3) Documents Relating to the RIF and Bullis' Promotion to DCR

The entire decisional process in which Bullis, in effect, "leapfrogged" Marlow in the midst of a RIF is central to Marlow's claim. However, "documents related to the 2009-2010 reduction in force" can also be construed as "overlybroad [*sic*] or not reasonably calculated to lead to admissible evidence" because, as CCSB asserts, Marlow is seeking *all* documents related to some 525 positions that were at any time contemplated for the RIF in FY 2010. (Def.'s Br. at 12.)[6]

Certainly, at least some documents related to the RIF process are discoverable because Marlow alleges that CCSB knew from the outset that the DGBR position would be eliminated during the RIF process. Indeed, without the RIF process, there is no allegation of intentional adverse action. Therefore, any documents related to the decision to RIF the DGBR position, even if not admissible themselves, would be reasonably calculated to lead to admissible evidence regarding the subject. The documents may also tend to show whether CCSB followed its own policies or violated them in a manner that disproportionately affected older employees. Marlow should therefore be permitted to discover all documents related to the RIF of the DGBR position, as well as any documents specifically referencing whether CCSB considered a RIF of the DCR or

---

[6]Marlow argues that CCSB waived any argument as to scope of discovery for RIF documents because it's objection on this ground was not timely. The Court concludes, however, that the failure of CCSB to lodge the objection in a timely fashion was the result of excusable neglect because, as the a "meet and confer" letter dated August 2, 2010 indicates, CCSB initially read the request for RIF documents to apply only to the elimination of Marlow's job. However, once CCSB understood that Marlow sought discovery of *all* RIF documents, including those involving unrelated positions, it lodged its objection that such a request was overly broad.

CIS positions. In addition, CCSB must also produce any RIF documents that are more general in nature, such as those pertaining to RIF goals, policies, and procedures, as they may assist in placing patters in proper perspective.

As for the documents related to Bullis' promotion, Marlow argues that CCSB produced only those that it unilaterally determined were relevant. (Id.) Specifically, Marlow asserts that CCSB has not produced: "(1) a document from the interview panel that identifies a 'synopsis of [Bullis'] strengths and areas requiring improvement'; (2) any applicant information or resumes of other candidates; (3) any interview panel notes whatsoever from the interviews of Bullis or the other candidates." (Id.) Such information is potentially relevant because Marlow may be able to prove her claim by showing how the employer acted in regard to other employees. Such information could also show how CCSB considered older candidates for the DCR position. Therefore, CCSB must also produce all documents related to Bullis' promotion to the position of DCR unless designated as irrelevant, including irrelevant private information, subject to an initial *in camera* review by the Court and issuance of a Protective Order for any subsequent disclosure.

**B.    Plaintiff's Motion for Enlargement of Time**

CCSB correctly asserts that Rule 56(f) requires Marlow to "show[] by affidavit that, for specified reasons, it cannot present facts essential to justify opposition" in order to seek a continuance for additional discovery. However, the Fourth Circuit has enunciated guidelines for when a trial court may dispense with such a requirement:

> '[T]he failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.' Nevertheless, in some cases courts have held that summary judgment was premature even when the opposing party failed to file a Rule 56(f) affidavit . . . When the nonmoving party, through *no fault of his own*, has had little or no opportunity to conduct discovery, and

13

when fact-intensive issues, *such as intent,* are involved, courts have not always insisted on a Rule 56(f) affidavit... Specifically, if the nonmoving party's objections before the district court *'served as the functional equivalent of an affidavit,'* and if the nonmoving party was *not lax in pursuing discovery*, then we may consider whether the district court granted summary judgment prematurely, even though the nonmovant did not record its concerns in the form of a Rule 56(f) affidavit.

Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244-45 (4th Cir. 2002) (citations omitted) (emphasis added). The affidavit should "particularly specif[y] legitimate needs for further discovery." Ngyuen v. CNA Corp., 44 F.3d 234, 242 (4th Cir. 1995). "[V]ague assertions as to matters upon which the district court should have allowed discovery to continue" do not suffice to stay a court's decision on a motion for summary judgment. Id.

Marlow's pursuit of discovery can hardly be characterized as "lax," given the pending motion to compel. Moreover, the motion to compel itself specifies the need for further discovery production. Indeed, CCSB's intentions when it eliminated the DGBR position may constitute a material fact in dispute precluding summary judgment relief, depending on what information is disclosed when CCSB complies with the Court's order compelling at least part of the requested production.

CCSB moves for summary judgment on a number of grounds, one of which indicates that "[t]he only relevant question before the [C]ourt in this case is whether Newsome's comment was a 'thinly veiled' reference to Marlow's age." (Def.'s S.J. Br. at 19.) What Newsome meant by his comment is subject to further inquiry, particularly to determine whether such a comment indicates age-related bias. Granted, it may not; but discovery on the issue is appropriate prior to entertaining the Defendant's motion for summary judgment.

The Court therefore grants Marlow's motion for enlargement of time to respond to

CCSB's motion for summary judgment. Under the Court's Scheduling Order, discovery must be completed by October 8, 2010. Therefore, the Court will permit Marlow to respond to the motion for summary judgment on or before October 11, 2010. CCSB may then file a reply brief by October 14, 2010. The Court may then entertain oral argument on the motion, to be scheduled, if at all, upon its review of all relevant submissions.

## IV. CONCLUSION

For the reasons discussed herein, Plaintiff's motion to compel (Docket No. 18) is GRANTED in part and DENIED in part, and Plaintiff's motion for enlargement of time to respond to Defendant's motion for summary judgment (Docket No. 22) is GRANTED in part and DENIED in part.

An appropriate Order shall issue.

/s/
Dennis W. Dohnal
United States Magistrate Judge

Richmond, Virginia
Dated: September 15, 2010

15