IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **DEBRA MARLOW,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL NO. 3:10cv18-DWD |
| ) | |
| **CHESTERFIELD COUNTY** ) | |
| **SCHOOL BOARD,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This matter is before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1) on the Plaintiff's motion to compel production of documents and for discovery sanctions (Docket No. 37) ("Second Motion to Compel" or "Second Motion"). Although the motion is not yet "ripe" with a Plaintiff's reply, the Court entertained oral argument on the motion, with the consent of the parties, at a hearing on Defendant's motion for summary judgment, at which time the Defendant had full opportunity to present its position on the issues involved. For the reasons set forth herein, the Court GRANTS in part and DENIES in part the Plaintiff's motion, as directed in the accompanying Order.

### I. BACKGROUND

Debra Marlow ("Marlow" or "Plaintiff"), brings this single-count age discrimination action against the Chesterfield County School Board ("School Board" or "Defendant") pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"). A principal

theory of her case is that the School Board misapplied its reduction in force ("RIF") policies in a manner that discriminated against her based on her age, resulting in her decision to retire rather than accept a proposed demotion in March 2009. (Compl. ¶¶ 19, 25.) Specifically, she alleges that the School Board failed to give effect to a policy that required the RIF of less-senior employees in the same "position classification" before it permitted the RIF of more-senior employees. (Compl. ¶ 26; Evans Aff. at Ex. 1.)

Discovery throughout this case has been, to put it politely, contentious. For example, at oral argument on a previous motion to compel ("First Motion to Compel" or "First Motion"), held on September 8, 2010, counsel for the Plaintiff indicated that he did not possess sufficient trust that Defendant was forthcoming in producing discoverable documents. Without consideration of the Plaintiff's distrust of the Defendant, the Court issued an order, granting in part and denying in part, the Plaintiff's First Motion to Compel. The Court also directed that each party bear their own costs and attorneys' fees; and while it was unstated, the Court did so because there appeared to be a good faith dispute over the scope of discovery, and both positions were reasonably grounded in existing law and fact. (See September 15, 2010 Order at Docket No. 28.)

On September 28, 2010, the Plaintiff deposed Dr. Sharon Thomas ("Thomas"), Chief Executive to the Superintendent of Schools pursuant to Fed. R. Civ. P. 30(b)(6). (Pl.'s Br. Supp. Mot. Compel ("Pl.'s Br.") at Ex. 2.) At the deposition, counsel for the Plaintiff examined Thomas in regard to minutes of a "Direct Report Meeting" held on May 11, 2009, at which time the Superintendent's "Direct Report" subordinates briefed him on a variety of topics. (Thomas Dep. 31:1-2.) As the meeting minutes indicate, one of the topics discussed was "the use of

2

seniority in making RIF decisions." (Pl.'s Br. Opp'n Mot. Summ. J. at Ex. 15.) The discussion was an apparent reference to a third-party proposal to revise the School Board's RIF policy that favors seniority as a criterion for "lay off" decisions. (Id.) Plaintiff's counsel questioned Thomas at length about the meeting, and during the questioning, Thomas revealed that she had drafted the meeting minutes using her personal notes that she had taken during the session. (Thomas Dep. 31:3-15.) Moreover, she indicated that her handwritten notes would be more detailed than the meeting minutes, which were only a "summary." (Id. at 31:6-12, 33:2-4.)

Based on the revelation, Marlow's counsel sent a "meet-and-confer" letter to counsel for the defendant School Board on September 28, 2010, demanding that the School Board produce Thomas' handwritten notes from the May 11 "Direct Report" meeting. Counsel for the School Board responded, indicating that, as Newsome testified at his deposition, the School Board did not seriously consider any such revisions to the seniority policy. Moreover, defense counsel emphasized that the May 11 meeting took place *after* Marlow's allegedly adverse employment action, presumably rendering those notes irrelevant to the pending litigation.

Most probably, the notes no longer exist at this point in time. (Thomas Dep. 50:12-15; see also Pl.'s Br. at 3.) As Thomas testified at deposition, her standard practice in regard to such note taking is to discard them "after awhile." (Id. 50:16-19.) However, she was likely aware that there was a litigation "hold" in effect at the time with respect to Marlow's anticipated litigation. (Id. 33:5-16; Evans Dep. 157:13.) Thus, Marlow has filed her Second Motion to Compel, seeking an order compelling production of the notes, or in the alternative, sanctions in the form of a jury instruction permitting an adverse inference based on Thomas' purported spoliation of the notes. (Pl.'s Br. at 4.)

## II. STANDARD OF REVIEW AND APPLICABLE LAW

Although the Court has "broad discretion in choosing an appropriate sanction for spoliation, 'the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine.'" Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001) (citation omitted). "In addition, a court must find some degree of fault to impose sanctions." Id. While a finding of bad faith permits sanctioning a party with an adverse-inference jury instruction, such a remedy is not always necessary or appropriate. Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 156 (4th Cir. 1995) (citation omitted). "But when a proponent's *intentional* conduct contributes to the loss or destruction of evidence, the trial court has discretion to pursue a wide range of responses both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct." Id. (emphasis added) (citing Welsh v. United States, 844 F.2d 1239, 1246 (6th Cir. 1988); Nation-Wide Check Corp. V. Forest Hills Dist., Inc., 692 F.2d 214, 218 (1st Cir. 1982)). Moreover, to permit such a sanction, "it would have to *appear* that the evidence would have been relevant to an issue at trial and otherwise would *naturally* have been introduced into evidence." Id. (emphasis added).

In evaluating whether sanctions for spoliation are appropriate, the Court should focus not only on the conduct of the party accused of spoliation, but also on the resulting prejudice, if any. Silvestri, 271 F.3d at 593 (applying New York law). Courts in the Fourth Circuit have recognized three elements that a party must prove in order to obtain sanctions for spoliation: (1) that the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) that the destruction or loss was accompanied by a "culpable state of mind"; and (3) that the evidence destroyed or altered was "relevant" to the claims or defenses of

4

the moving party to an extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims at issue. Goodman v. Praxair Servs., Inc., 632 F. Supp. 2d 494, 509 (D. Md. 2009); Thompson v. U.S. Dept. Housing & Urban Development, 219 F.R.D. 93, 100 (D. Md. 2003); Zubulake v. UBS Warburg, LLC, 220 F.R.D. 212, 220 (S.D.N.Y. 2003).

### III. DISCUSSION

There is no evidence in the present record that Thomas *knowingly* destroyed relevant evidence by discarding her handwritten "Direct Report" meeting notes, or that she engaged in any related misconduct. Thomas testified that she generally discarded the notes "after awhile," when it no longer seemed necessary to retain them. (Thomas Dep. 50:16-19.) There is no evidence that she made a conscious decision to destroy the notes because of Marlow's forthcoming lawsuit. Thus, it would be unreasonable to expect Thomas to consider the litigation hold when she discarded her handwritten notes, and, accordingly, it cannot be said that she had a "culpable" state of mind when she did so. See, e.g., Goodman, 632 F. Supp. 2d at 509.

Additionally, the September 15, 2010 Order on which Plaintiff relies resulted from a good faith dispute concerning the proper scope of discovery in the case. If counsel could not agree on the proper scope of discovery such that Court intervention was required, why is it reasonable to assume that Thomas would conclude that her handwritten notes were discoverable? Indeed, the Court's previous discovery Order recognized as much by granting only part of the Plaintiff's motion. Significantly, the formal meeting minutes do not even reference the Plaintiff, or any anticipated lawsuit. Thus, it is reasonable to infer and conclude that as far as Thomas was concerned, the notes did not immediately "appear" to contain relevant information such that they would "naturally" be utilized at trial. See Vodusek, 71 F.3d at 156.

5

Furthermore, at best, the handwritten notes that the Plaintiff seeks have *de minimis* relevance to the litigation. The meeting minutes indicate that the School Board *may* have discussed a third-party's suggestion that it revise its seniority-based RIF policy. (See Def.'s Br. Opp'n Mot. Compel at 2-3.) Such discussion had to have occurred *after* Marlow learned about the proposed RIF of her then-held position, and *after* the School Board officially eliminated the position. (Marlow Decl. ¶¶ 12-14.) Even if the School Board considered such a revision to its policy, such contemplation does not demonstrate age-based animus as may have existed as to Plaintiff. Here, the central issue of age-related bias concerns the Superintendent's use of the term "21st Century skills," and any evidence concerning his belief that age might be a basis to judge such a skill set. (See, e.g., Def.'s Br. Supp. Mot. Summ. J. at 19.) The meeting minutes do not contain any reference to the term.

Finally, the disposal of the handwritten May 11, 2009 Thomas notes will result in little prejudice to Marlow, if any. Any evidence of age-related animus in her case stems, primarily, from the Superintendent's use of the term "21st Century skills." The evidence sought has little, if any, bearing on that issue. In addition, Marlow had a full and fair opportunity to depose both Thomas and the Superintendent about the topics discussed at the May 11 "Direct Report" meeting, and counsel took full advantage of that opportunity. (Newsome Dep. 102-104; Thomas Dep. 25-41.) Therefore, it does not appear that Marlow will be necessarily prejudiced as a result of the School Board's inability to produce Thomas' handwritten notes from the May 11 "Direct Report" meeting.

However, in order to mitigate what little prejudice may evolve, the Court will direct the School Board to determine whether any other meeting participants possess their own notes from

the meeting in question, and to produce them to Marlow forthwith. If the School Board determines that no such notes exist, it shall certify the same to the Court by no later than the scheduled Final Pretrial Conference.

## IV. CONCLUSION

For the reasons discussed herein, the Court hereby GRANTS in part and DENIES in part the Plaintiff's motion to compel and motion for sanctions. The Court grants the motion only to the extent that it directs the Defendant to investigate the existence of any other handwritten notes made by any "Direct Report" meeting participant during the May 11, 2009 "Direct Report" meeting. If such notes are recovered, the Defendant shall produce them forthwith. If not, the Court directs the School Board to certify the same. In all other respects, the motion is denied, including the demand for related attorneys' fees.

An appropriate Order shall issue.

/s/
Dennis W. Dohnal
United States Magistrate Judge

Richmond, Virginia
Dated: October 28, 2010